UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| - against - | )    No.  82 CR 312 (CSH) <br>) |
| MUTULU SHAKUR, | )<br>)    **MAY 27, 2020** |
| Defendant. | )<br>) |

### PRELIMINARY RULING ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

**HAIGHT, Senior District Judge:**

Defendant Mutulu Shakur is currently serving a 60-year sentence of imprisonment imposed following his conviction in 1988 in this Court for conspiracy to violate RICO, participation in a racketeering enterprise, bank robbery, armed bank robbery, and bank robbery murder. Shakur was tried together with a co-defendant, Marilyn Jean Buck, who was convicted on the same charges.

According to the calculation of the federal Bureau of Prisons ("BOP"), the agency directing the facility where Shakur is incarcerated, he is scheduled to be released from custody on December 15, 2024. Sakur has now filed a motion in this Court for a compassionate release from custody and a reduction of his sentence. Shakur bases that motion upon the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A).

The Government opposes Shakur's motion. The Government contends, first, that Shakur has not exhausted his administrative rights as specified in and required by the First Step Act. Second, and in the alternative, the Government contends that Shakur's motion for compassionate

1

relief lacks merit.

In a Memorandum and Order dated April 20, 2020, 2020 WL 1911224, the Court directed expedited briefing on the issues. That briefing has been completed. Shakur is represented *pro hac vice* by attorneys from Santa Monica, California and Chicago, Illinois. The Government is represented by the United States Attorney for this District. The briefs of counsel are well-researched, forcefully expressed, and accompanied by numerous exhibits. The briefs address the procedural issue of exhaustion of administrative rights, and the underlying merits of Shakur's motion for compassionate release.

I

Before evaluating the merits of Shakur's motion, the Court must consider the Government's objection that this matter is not properly before the Court at this time, because Shakur has not yet exhausted the opportunity Congress gave in the First Step Act to the BOP to address such motions in the first instance.

Shakur, and his co-defendant Buck, were incarcerated for their participation in a group called "the family," which from 1976 to 1981, in the words of the Second Circuit's opinion rejecting their direct appeal, "committed a series of robberies and attempted robberies of armored trucks in the Northeast." *United States v. Shakur*, 888 F.2d 234, 236 (2d Cir. 1989). That opinion continues:

> Shakur was one of the leaders of a small circle of men who planned and executed the robberies, while Buck was a member of the so-called "secondary team," a group consisting mostly of women who assisted in the robberies by driving get-away cars, planning escape routes, and renting "safe houses." The "family's" final and most notorious crime, the "Brinks robbery" of October 20, 1981, resulted in the shooting deaths of a Brinks guard and two police officers in Nanuet and Nyack, New York.

2

*Id*. The Court sentenced Shakur to 60 years' imprisonment, with a recommendation that the BOP deny parole.

Shakur's efforts to obtain a compassionate release began on June 27, 2019, when he submitted an Inmate Request for Compassionate Release Consideration to the federal prison at Victorville, California, where he was then incarcerated. Shakur indicated on that form that he was over 65 years of age, with "medical conditions," and had served more than 50% of his sentence and more than 10 years. Asked by the form to explain "the extraordinary or compelling reasons" justifying compassionate relief," Shakur responded:

> I am 69 years old. I am experiencing serious deterioration in physical health due to the aging process, (arthritic conditions in multiple joints, Cataracts, hypertension, glaucoma spondylosis). I have served 35 years in prison.

This request, submitted by Shakur in June 2019, does not appear to have been promptly acted upon. According to Shakur's main brief on the present motion, Doc. 195 at 2, "the prison staff had resubmitted his request for compassionate relief on November 5, 2019, adding the information that he had a terminal disease – multiple myeloma." Supplemental information from Shakur's counsel "explaining' the gravity of his condition" was submitted to the BOP in November of 2019. *Id.*

The BOP denied Shakur's request for a compassionate release and reduction in sentence. The BOP's decision is expressed in a memorandum dated December 5, 2019 from the Assistant General Counsel of the BOP in Washington, D.C. to the warden of the Victorville prison. The BOP's decision recites that "Mr. Shakur, age 69, has been diagnosed with multiple myeloma. He has a history of hyperlipidemia, hypertension, diabetes, Barrett's esophagus with dysplasia,

3

cataract, glaucoma, and anemia." The December 5, 2019 decision then notes that Shakur "began receiving modified chemotherapy twice a week in November 2019," and an oncologist recommended that "after three months of chemotharapy, Mr. Shakur should be considered for a stem cell transplant." The BOP's decision December 5, 2019 memo denied Shakur's request because he has "tolerated chemotherapy with no adverse effects," his life expectancy "is currently considered to be indeterminate and as long as seven years," and "could possibly be extended with a stem cell transplant." The BOP concluded that Shakur did not meet an agency regulatory requirement that applicants for a reduction in sentence must have a terminal illness with a life expectancy of 18 months or less; nor did he meet the First Step Act's definition of "terminal illness" as "a disease or condition with an end-of-life trajectory."

The next step in Shakur's quest for compassionate release came on April 16, 2020, when his present attorneys filed an "emergency motion for reduction in sentence." [Doc. 195]. According to that motion at 2, counsel for Shakur regard the BOP's denial of Shakur's request on December 5, 2019 as "a final administrative decision authorizing Mr. Shakur to directly move this Court for a Reduction in Sentence to be adjudicated pursuant to 18 U.S.C. § 3582(c)(1)(A)."

Shakur's April 16, 2020 motion, addressed to this Court, refers for the first time to the COVID-19 virus that is now afflicting the nation as an additional ground Shakur's early and compassionate release. Shakur's motion says at page 4: "Mr. Shakur's advanced age and incurable cancer present 'extraordinary and compelling' reasons for release, reasons which are only exacerbated by the lethal threat he faces due to COVID-19." Shakur submits declarations of physicians attesting to the risks of virus infection faced by prison inmates. He also submits a memorandum dated April 3, 2020 from Attorney General Barr to the Director of the Bureau of

4

Prisons, in which the Attorney General reiterates his earlier direction to the BOP "to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates," finds that "emergency conditions are materially affecting the functioning of the Bureau of Prisons," and directs the BOP Director to "immediately maximize appropriate transfers to home confinement of all appropriate inmates" held at "BOP facilities where COVID-19 is materially affecting operations." Shakur's main brief on this motion devotes two sections to arguing that his continued incarceration places him at increased risk of contracting COVID-19, and that his age and underlying health conditions place him at extraordinary risk of severe illness or death, should he contract COVID-19 while in prison.

Shakur's new-found reliance upon the COVID-19 virus triggers the Government's failure-to-exhaust objection. The First Step Act's relevant provision is found in § 3582(c)(1)(A), which authorizes a defendant to make a motion in a district court to reduce the term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." With that provision in mind, the Government's letter brief at 3 recites the BOP's denial on December 5, 2019 of Shakur's June 2019 petition for compassionate release, and argues that the June 2019 petition

> plainly does not meet the exhaustion requirement. That petition relied on different grounds than those referenced in the instant Motion; most importantly, the June 2019 petition did not reference or rely on COVID-19 or Shakur's multiple myeloma. The exhaustion requirement is not a hollow one: Shakur should be required to raise the specific grounds for which he now seeks relief under §3582(c)(1)(A) with the BOP in the first instance, as Shakur did in his June 2019 petition to the BOP. *The BOP should be given the opportunity to review Shakur's recently filed request based on the COVID-19 pandemic and respond to that request within the 30*

Prisons, in which the Attorney General reiterates his earlier direction to the BOP "to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates," finds that "emergency conditions are materially affecting the functioning of the Bureau of Prisons," and directs the BOP Director to "immediately maximize appropriate transfers to home confinement of all appropriate inmates" held at "BOP facilities where COVID-19 is materially affecting operations." Shakur's main brief on this motion devotes two sections to arguing that his continued incarceration places him at increased risk of contracting COVID-19, and that his age and underlying health conditions place him at extraordinary risk of severe illness or death, should he contract COVID-19 while in prison.

Shakur's new-found reliance upon the COVID-19 virus triggers the Government's failure-to-exhaust objection. The First Step Act's relevant provision is found in § 3582(c)(1)(A), which authorizes a defendant to make a motion in a district court to reduce the term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." With that provision in mind, the Government's letter brief at 3 recites the BOP's denial on December 5, 2019 of Shakur's June 2019 petition for compassionate release, and argues that the June 2019 petition

> plainly does not meet the exhaustion requirement. That petition relied on different grounds than those referenced in the instant Motion; most importantly, the June 2019 petition did not reference or rely on COVID-19 or Shakur's multiple myeloma. The exhaustion requirement is not a hollow one: Shakur should be required to raise the specific grounds for which he now seeks relief under §3582(c)(1)(A) with the BOP in the first instance, as Shakur did in his June 2019 petition to the BOP. *The BOP should be given the opportunity to review Shakur's recently filed request based on the COVID-19 pandemic and respond to that request within the 30*

Case 1:82-cr-00312-CSH   Document 201   Filed 05/27/20   Page 5 of 14

Prisons, in which the Attorney General reiterates his earlier direction to the BOP "to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to our vulnerable inmates," finds that "emergency conditions are materially affecting the functioning of the Bureau of Prisons," and directs the BOP Director to "immediately maximize appropriate transfers to home confinement of all appropriate inmates" held at "BOP facilities where COVID-19 is materially affecting operations." Shakur's main brief on this motion devotes two sections to arguing that his continued incarceration places him at increased risk of contracting COVID-19, and that his age and underlying health conditions place him at extraordinary risk of severe illness or death, should he contract COVID-19 while in prison.

Shakur's new-found reliance upon the COVID-19 virus triggers the Government's failure-to-exhaust objection. The First Step Act's relevant provision is found in § 3582(c)(1)(A), which authorizes a defendant to make a motion in a district court to reduce the term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." With that provision in mind, the Government's letter brief at 3 recites the BOP's denial on December 5, 2019 of Shakur's June 2019 petition for compassionate release, and argues that the June 2019 petition

> plainly does not meet the exhaustion requirement. That petition relied on different grounds than those referenced in the instant Motion; most importantly, the June 2019 petition did not reference or rely on COVID-19 or Shakur's multiple myeloma. The exhaustion requirement is not a hollow one: Shakur should be required to raise the specific grounds for which he now seeks relief under §3582(c)(1)(A) with the BOP in the first instance, as Shakur did in his June 2019 petition to the BOP. *The BOP should be given the opportunity to review Shakur's recently filed request based on the COVID-19 pandemic and respond to that request within the 30*

5

>   *days required by law.*

(emphasis added).    I construe the emphasized sentence as an implicit representation by the United States Attorney that the BOP would give Shakur's recently filed request, thus phrased, the sort of consideration mandated by Attorney General Barr's April 3, 2020 memorandum to the BOP Director with respect to the impact of the pandemic upon federal inmates.

The reference in the Government's   brief to "multiple myeloma" in this particular context is entirely without substance.   Shakur's brief states without contradiction that his attorneys made his multiple myeloma diagnosis known to the BOP in November 2019, before the BOP's denial on December 5 of the relief Shakur sought in November of that year.   The BOP's denial explicitly discusses and rejects multiple myeloma as a basis for compassionate release.   While Shakur's June 2019 request to the BOP did not rely on multiple myeloma, his resubmitted November 2019 resubmitted request did so, and the BOP's December decision explicitly rejected it.

In contrast, however, the Government is correct in contending that Shakur's first reliance upon the COVID-19 pandemic as a ground for his release appears in the April 16, 2020 renewed motion.   The BOP has not responded to or commented upon that ground.   It is in these circumstances that the Government taxes Shakur with a failure to exhaust administrative remedies.

Defendant responds that "Shakur has met the exhaustion requirement.   He asked for compassionate release because of his age and medical problems including the danger of infection, and the BOP denied that request."   Reply Brief at 1.   Q.E.D. on exhaustion, Shakur concludes at that point.   He prefaces that conclusion by saying that his November 2019 revised petition to the BOP "specifically identified his advance stage multiple myeloma *and risk of infection* while immunosuppressed as a basis for release," and "the Government does not dispute that Mr. Shakur

requested compassionate release based on his age and medical conditions, *including his susceptibility to infection*. The Government also does not dispute that BOP denied that request." *Id*. (emphases added).

Shakur acknowledges, as he must, that his petitions to the BOP and the BOP denial of them, all in 2019, said nothing about the COVID-19 pandemic (which of course had not yet occurred). Nonetheless, Shakur professes to perceive, in his 2019 petitions to the BOP and their denial, an exhaustion of administrative remedies with respect to a then non-existent condition which did not emerge until 2020. That argument is something of a stretch. Shakur attempts it by observing that his multiple myeloma (relied on in his 2019 petitions) and the COVID-19 virus (not then in existence) are both sources of *infection.* That argument fails to persuade because these conditions and their effects are clinically quite different. The main thrust of Shakur's April 16, 2020 motion to the Court is that the *addition* of the COVID-19 pandemic to the medical conditions previously afflicting Shakur results in a *combination of circumstances* that makes a compelling case for compassionate release. The exhaustion question is whether the First Step Act requires Shakur to petition the BOP for compassionate release based on the asserted effect of the pandemic,  before moving the Court for that relief.

Shakur argues he need not do so, and cites *United States v. Asaro*, No. 17-cr-127, 2020 WL 1899221 (E.D.N.Y. Apr. 17, 2020) for that proposition. In January 2020, the BOP General Counsel denied Asaro's petition for compassionate release based on then-existing medical conditions. Thereafter, Asaro moved the district court for that relief. The district judge held that "the COVID-19 crisis poses an additional risk to Asaro," and "the combination of the COVID-19

7

health crisis and Asaro's age and pre-existing conditions constitutes an extraordinary and compelling reason for his release." 2020 WL 1899221, at *3, *6. On the exhaustion question, the judge said that Asaro "exhausted his administrative rights" when the General Counsel of the BOP denied his request for compassionate release in January 2020. Subsequently, the judge gave the after-occurring COVID-19 pandemic decisive consideration, although Asaro did not make a further petition to the BOP, asking the agency to consider the pandemic as a basis for compassionate release, before asking the district court to do so.

While that is the course Shakur asks me to take in the case at bar, *Asaro* is not a decision in his favor on the point. Shakur's Reply Brief, at 1 n.1, properly concedes: "In *Asaro* the Government acknowledged that the defendant had exhausted the administrative remedies and made no argument that the COVID-19 pandemic required him to resubmit his request." For whatever reason, the United States Attorney for this District is more contentious than his Eastern District colleague: the Government in this case specifically objects to Shakur's *failure* to resubmit his request to the BOP, based upon the post-BOP denial pandemic. The Government is entitled to make that objection in the case at bar. This Court considers it as the threshold issue on the present motion.

II

The combined result of the First Step Act in 2018 and the COVID-19 pandemic in 2020 has been a uncontained increase of motions in district courts by federal inmates seeking to reduce the length of their sentences. The effect of the exhaustion provision in § 3582(c)(1)(A) of the Act in such cases has given rise to recurring issues, which the Second Circuit has yet to address. Those issues are illustrated by two comprehensive opinions in this District: Judge Rakoff's

decision in *United States v. Haney*, No. 19-cr-541, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020), and Judge Broderick's decision in *United States v. Ng Lap Seng*, No. S5 15-cr-706, 2020 WL 2301202 (S.D.N.Y. May 8, 2020).

In *Haney*, a 61-year-old defendant with 33 months of a 42 months' sentence yet to serve moved in the district court for a compassionate release on the ground that "The rapid spread of COVID-19 has caused a public health crisis and a national emergency that can best be reduced by the kind of social distancing not easily attained in an overcrowded federal prison facility." 2020 WL 1821988, at *1. The Government objected that "this matter is not properly before the Court at this time, because Haney has not yet exhausted the opportunity that Congress has given to the Bureau of Prisons to address such motions in the first instance." *Id.* (citing § 3582(c)(1)(A). Judge Rakoff posed the resulting questions as follows:

> Federal courts, not least in this District, are already divided on this issue, while the Second Circuit has not yet directly addressed that division. The issue, in turn, raises two questions: whether the exhaustion requirement is jurisdictional; and whether, even if the exhaustion requirement is not jurisdictional, it is still not waivable, even in circumstances like those presented by the COVID-19 crisis.

*Id.* (footnotes omitted). Judge Rakoff held that "the exhaustion requirement in § 3582(c)(1)(A)" is not jurisdictional but "is a claim-processing rule that does not deprive this Court of jurisdiction," 2020 WL 1821988 at *3, and the district court had the authority "to excuse or 'waive' the exhaustion requirement and consider the merits of Haney's motion." *Id.* In arriving at those conclusions, Judge Rakoff reflected on the Act's pertinent provision:

> Importantly, § 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense. That is, the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the BOP) before bringing his petition to court. Rather, it requires the defendant *either* to exhaust

9

> administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court.

*Id*. (emphases in original). Judge Rakoff waived this limited requirement, reasoning that "the objective of meaningful and prompt judicial resolution is clearly best served by permitting Haney to seek relief before the 30-day period has elapsed." 2020 WL 1821988, at *4. He then denied Haney's motion for compassionate release on the merits. In the case at bar, Shakur places primary reliance upon the *procedural* aspects of Judge Rakoff's decision.

In *Ng Lap Seng*, the defendant (referred to as "Ng") moved in the district court for compassionate release from his sentence on the ground that "the recent COVID-19 pandemic, the high risk of infection within federal prisons, and Ng's advanced age and serious medical conditions . . . make it likely that he will soon contract the virus and become critically ill or die from it." 2020 WL 2301202, at *1. On March 30, 2020, Ng filed a request for release with the warden of his prison. The warden denied the Ng's request on April 20. Ng had filed his motion in the district court on April 6. In an opinion filed on May 8, Judge Broderick addressed "the exhaustion issue because Defendant has not yet appealed BOP's denial and thus, under my reading of the statute, has not satisfied the statute's exhaustion requirement by 'fully exhaust[ing] all administrative rights to appeal [the] failure of the Bureau of Prisons to bring a motion on [his] behalf. . . . '" *Id*. at *4 (citing and quoting § 3582(c)(1)(A). The debated jurisdictional nature of that provision, which prompted Judge Rakoff's analysis in *Haney*, did not concern Judge Broderick; in his view, "it does not matter whether § 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, because its exhaustion requirement is clearly statutory and therefore mandatory." *Id.* at *5. That construction led Judge Broderick to the conclusion that assuming Ng "does appeal" *within the BOP* "and/or that the time for such appeal has not yet run,

I would find that his motion must be dismissed because Defendant has failed to exhaust his administrative remedies." *Id.* at *3. His opinion notes, in this regard, that "A BOP Program Statement outlines in detail the administrative *appeal process* for compassionate release applications." 2020 WL 2301202, at *7 (emphasis added).

Judge Broderick's analysis, it will be noted, comes into play if the BOP initially *denies* a request for compassionate release. If the BOP does not respond to a defendant's request within thirty days of its delivery to the warden, Judge Broderick agrees with the holding in *Haney* and other district court cases. He says in *Ng*:

> I agree with the courts that have interpreted § 3582(c)(1)(A)'s "lapse" language as requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days, giving the court discretion to hear a compassionate release motion if the BOP has failed to timely consider the request.

*Id*. at *6. While he did not squarely address the point, presumably Judge Broderick does not agree with Judge Rakoff's holding in *Haney* that district courts have the authority to disregard the Act's exhaustion provision and proceed directly to the merits of a compassionate release motion *before* the thirty days after a request to the warden have elapsed.

Other district court cases hold routinely that an inmate's COVD-19 pandemic based motion for compassionate release must first be presented to the BOP. In *United States v. Garcia*, No. 16-cr-719-2, 2020WL 2539078 (S.D.N.Y. May 19, 2020), Circuit Judge Sullivan (sitting by designation in the district court) considered a release application based on the pandemic:

> The government opposed Garcia's request, maintaining that until Garcia exhausts his administrative remedies, the Court must take no action upon his application.
>
> On April 15, 2020, the Court denied Garcia's motion without prejudice, finding that Garcia had failed to exaust his administrative

11

> remedies. Three weeks later, Garcia renewed his request, stating that he has since remedied that procedural defect.

2020 WL 2539078 at *1-*2. The Government then opposed Garcia's application on the merits. Judge Sullivan denied it on the merits.

In *United States v. Patterson*, No. 17-cr-118-6, 2020 WL 2571044 (S.D.N.Y. May 21, 2020), Judge Failla said at *3: "Patterson's motion is properly before the Court because more than 30 days have elapsed since the date of his compassionate release request to the Warden." That conclusion is in accord with the holdings in *Haney* and *Ng Lap Seng* that the passage of thirty days without a response by the BOP to a compassionate release request authorizes a district court to proceed immediately to a consideration of the merits of the request.

### III

The decisions in *Haney* and *Ng Lap Seng* each cite a plethora of other district court cases on the First Step Act exhaustion issue. They cannot all be fully reconciled. Having considered these cases, and the wording of the First Step Act, I reach the following conclusions in the case at bar.

I hold that the Court cannot reach the merits of Shakur's motion for a compassionate release until he has submitted a renewed request for that relief to the BOP, based in whole or in part upon the COVID-19 pandemic.

The pandemic furnishes the main thrust of Shakur's April 16, 2020 motion in this Court. The pandemic is materially different from the medical conditions Shakur asserted as the grounds for his petitions to the BOP in 2019. In order for this Court to grant or deny Shakur release based on the effect of the pandemic, solely or in combination with unrelated medical conditions, without giving the BOP the first opportunity to consider the effect of the pandemic

12

upon the propriety of Shakur's release, I would need to disregard entirely the exhaustion provision in § 3582(c)(1)(A).  I am not prepared to do that.  To that extent, Shakur's failure to exhaust administrative remedies bars anapplication to the Court on the present record.  He must address a revised request to the BOP.

Shakur's renewed request, based upon the CVID-19 pandemic, would under the statutory scheme be delivered to the warden of the present place of incarceration.  I assume Shakur will do so.  If the case follows its past pattern, the matter will be referred to the General Counsel of the BOP.  The request must be acted upon within thirty days of its receipt by the warden.  If that period of time lapses without response, the Court will proceed to consider the motion's merits (which have been thoroughly briefed already).  If the Office of the BOP General Counsel grants Shakur's request, this action is mooted.  If the BOP General Counsel denies the request, I will follow Judge Rakoff's opinion in *Haney*, regard Shakur as having exhausted his administrative remedies, and proceed to consider the motion's merits.

This Ruling is concerned solely with the procedural aspects of the case.  The Court neither states nor intimates any view with respect to the merits of the underlying motion.

The case will proceed in accordance with this Ruling.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         May 27, 2020


                                            s / CHARLES S. HAIGHT, JR.
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge

13