UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MUTULU SHAKUR,<br><br>                    Defendant. | No. 82 CR 312 (CSH)<br><br>August 31, 2022 |

## RULING ON DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE

**HAIGHT, Senior District Judge:**

Defendant Mutulu Shakur, a federal prisoner currently serving a sentence imposed by this Court, has filed a self-styled "Emergency Motion for Reduction in Sentence" [Doc. 207]. This is a renewal of an earlier motion by Shakur for such relief. The Government opposes this renewed motion, as it did the earlier one. This Ruling resolves Shakur's renewed motion.

### I. Background

Shakur is currently serving a 60-year term of imprisonment imposed following his conviction by a jury following trial in this Court for conspiracy to violate RICO, participation in a racketeering enterprise, bank robbery, armed bank robbery, and bank robbery murder. Shakur was tried together with a co-defendant, Marilyn Jean Buck, who was convicted on the same charges.

Shakur committed the crimes for which he is presently incarcerated between 1976 and 1982. He was convicted on those charges in 1988, and has been imprisoned since then. Shakur has recently developed multiple myeloma, a cancerous and life-threatening condition.

Shakur moved earlier for a reduction in sentence and compassionate release from custody. He based that motion on the First Step Act of 2018, codified at 18 U.S.C. § 3582(c)(1)(A). I denied

that motion in an opinion reported at 498 F. Supp. 3d 490 (S.D.N.Y. 2020) ("*Shakur I*"), familiarity with which is assumed. *Shakur I* held that the circumstances of the case "make it impossible for the Court to find that Shakur demonstrates 'extraordinary and compelling reasons' for a *compassionate* release." 498 F.Supp. 3d at 499–500. The opinion in *Shakur I* concluded by saying:

> Should it develop that Shakur's condition deteriorates further, to the point of approaching death, he may apply again to the Court, for a release that in those circumstances could be justified as "compassionate." That is what occurred in the cases of Shakur's co-defendant, Marilyn Buck, and Bernard Ebbers.

*Id.* at 500.

Buck was serving a 50-year term of imprisonment when she contracted uterine cancer, obtained a compassionate release from the Bureau of Prisons on July 15, 2010, and died at her home on August 3, 2010, at the age of 62. Shakur's present age is 71. The most recent medical evidence from prison authorities indicates that drug therapies are not controlling Shakur's multiple myeloma, and he may fairly be described as having reached "the point of approaching death." Shakur's present renewal motion attaches that medical evidence, and reminds the Court of its quoted language from the conclusion of *Shakur I*.

In its Letter Brief [Doc. 215], the government adheres to its position that Shakur's motion for a reduction of sentence and compassionate release must be dismissed. The government makes two contentions: the first procedural, the second substantive. First, the government says that "Shakur's motion should be denied on procedural grounds because Section 3582(c) does not apply to prisoners—like Shakur—whose terms of incarceration were imposed for criminal conduct occurring before November 1, 1987." Letter Brief at 5. Second, the government says that "in any event, Shakur's motion fails on the merits, because granting Shakur a sentence reduction would

be inconsistent with the Section 3553(a) factors in light of the reprehensible nature of his crimes." Letter Brief at 10.

## II. Discussion

I begin this analysis with the government's contention that Shakur's motion is procedurally barred. If that contention is well founded, the Court would lack authority to consider the merits of the motion, and I would not reach them.

By this motion, Shakur asks the Court to reduce the 60-year sentence passed upon him in 1988, following his conviction for crimes committed between 1976 and 1982. "Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). "Because sentences are final judgments, a court may not modify a previously imposed term of imprisonment unless authorized by statute." *United States v. Faul*, No. 3:83-cr-00016, 2021 WL 965311, at *2 (D.N.D. March 15, 2021) (citing *Freeman*). A defendant asking a district court to modify a previously imposed term of imprisonment bears the burden of demonstrating the court's statutory authority to grant that relief.

In the case at bar, Shakur relies upon the exception to the rule of finality that is found in the First Step Act of 2018, at 18 U.S.C. § 3582(c)(1)(A)(i). That section provides that "in any case" a district court may release a prisoner, on the prisoner's own request (after exhausting administrative remedies) when "extraordinary and compelling reasons" justify release.

The government contends that Shakur cannot invoke this provision in the First Step Act because, under the statutory scheme, the provision applies only to offenses committed after November 1, 1987, and Shakur committed his crimes of conviction in earlier years.

To evaluate that contention, it is necessary to trace the evolution of the relevant statutes. The Second Circuit undertook that task in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), which defined the district courts' authority to evaluate prisoners' motions for compassionate release.

Judge Calabresi's opinion in *Brooker* recites that "[t]he statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984." 976 F.3d at 231. That statute is more frequently referred to as "the Sentencing Reform Act of 1984." This 1984 statute, *Brooker* notes, gave the Bureau of Prisons ("BOP") "exclusive power over all avenues of compassionate release. For over 30 years any motion for compassionate release had to be made by the BOP Director. No matter what other changes Congress made to the compassionate release statute over the years, the BOP's absolute control over this mechanism for lenity remained." *Id*. (citation omitted).

Dissatisfaction arose with respect to the fact that the "BOP used this power sparingly, to say the least." *Brooker*, 976 F.3d at 231. In 2018, Congress passed the First Step Act, which "among numerous other reforms, made the first major changes to compassionate release since its beginnings in 1984. Chief among these changes was the removal of the BOP as the sole arbiter of compassionate release motions." *Id*. at 233. As the First Step Act states, the Second Circuit continued in *Brooker*, "a defendant may go to court 'after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]'" *Id.* The Second Circuit's quotation is from the First Step Act, 18 U.S.C. § 3582(c)(1)(A). It is that vintage-2018 statutory enactment that Shakur identifies as the source of this Court's authority for entertaining his present motion for compassionate release.

To resume the chronological analysis of the statutory scheme: The district courts' authority for compassionate relief was originally derived from 18 U.S.C. § 4205(g), which empowered district courts to reduce the terms of imprisonment "upon motion of the Bureau of Prisons." Congress later replaced § 4205(g) with § 3582(c)(1)(A) as part of the Sentencing Reform Act of 1984 ("SRA"). Just like § 4205(g), the SRA originally empowered only the BOP to bring a compassionate release motion on a defendant's behalf. That is the limitation addressed by the First Step Act of 2018, which amended § 3582(c)(1)(A) to additionally enable district courts to grant compassionate relief upon a defendant's motion.

We see, then, that the statute upon which Shakur relies as the source of authority for this motion has as its genesis a congressional purpose to amend a particular limitation in the Sentencing Reform Act of 1984. "Before 1984 compassionate release existed alongside the now-abolished federal parole system[.]" *Brooker*, 976 F.3d at 231 n.1. Despite its title, the SRA did not become effective in the designated year. In *United States v. Jackson*, 991 F.3d 851, 852 (7th Cir. 2021), the Seventh Circuit identified November 1, 1987, as "the date on which the Sentencing Reform Act of 1984 took effect." In *United States v. King*, 24 F.4th 1226, 1229 (9th Cir. 2022), the Ninth Circuit said that "[t]he SRA repealed § 4205(g) in 1984 and replaced it with § 3582(c)(1), effective on November 1, 1987[;]" the court referred to amendments that had the effect of "finalizing the effective date of the SRA." In *King,* the defendant who moved in the district court for compassionate release had committed the crimes of conviction prior to November 1, 1987. *Id.* at 1228. The Ninth Circuit, affirming dismissal of the motion, held that "inmates who committed crimes before November 1, 1987, cannot move for compassionate release pursuant to 18 U.S.C. § 3582(c)(1), as amended by the [First Step Act]." *Id.* The Ninth Circuit reasoned:

> An amendment to the SRA established that § 3582(c)(1) only applies to prisoners who offended on or after November 1, 1987, and

> inmates who committed crimes on or before October 31, 1987, remain subject to § 4205(g) and cannot themselves file a motion for compassionate release. *See* . . . Sentencing Act of 1987 . . . § 2(a), 101 Stat. 1266 (1987) (inserting "shall apply only to offenses committed after the taking effect of this chapter" into the text of § 3582(c)(1)); *accord Jackson*, 991 F.3d at 854. As summarized by regulations on compassionate release, "18 U.S.C. [§] 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date [(called 'old law' prisoners)]. For inmates whose offenses occurred on or after November 1, 1987, [('new law' prisoners)], the applicable statute is 18 U.S.C. [§] 3582(c)(1)(A)." 28 C.F.R. § 572.40 (2021).
>
> . . .
>
> For these reasons, prisoners who, like King, stand convicted for crimes that predate November 1, 1987, are subject to § 4205(g) and cannot personally move a district court for compassionate release.

*Id.* at 1229.

In reaching that conclusion, the Ninth Circuit cited and chose to follow the Seventh Circuit's opinion in *United States v. Jackson*. 24 F.4th at 1229. *Jackson* held that since the defendant "committed his crime before November 1, 1987, the date on which the Sentencing Reform Act of 1984 took effect," he came within that group of "[p]eople whose crimes predate November 1, 1987" and "continue to be governed by the law in force at the time of their offenses, such as the old Chapter 311 of Title 18, which set up a system of parole." 991 F.3d at 852–53. In consequence, the Seventh Circuit concluded, "§ 3582 remains inapplicable to old-law prisoners." *Id.* at 854. *See also United States v. Wilkins*, 426 Fed. Appx. 443, 446 (6th Cir. 2011) ("courts that have considered the issue have concluded that defendants who committed offenses prior to November 1, 1987, and therefore were sentenced under the pre-Reform Act law, are ineligible for sentence reduction under § 3582(c) because that provision was not in effect for their sentence.").

The Second Circuit does not appear to have addressed the ability of an "old-law prisoner" like Shakur to invoke § 3582(c)(1)(A) of the First Step Act of 2018 as the source of his authority to file a motion for compassionate release in this Court. Several district judges in this circuit have

held that the First Step Act does not apply to inmates whose crimes were committed prior to November 1, 1987, and denied compassionate release motions for that reason. In *United States v. Rivera*, No. 86 Cr. 1124 (JFK), 2020 WL 2094094 (S.D.N.Y. May 1, 2020), Judge Keenan, addressing the issue *sua sponte*, held at *3: "it is well-established that the provisions of the SRA, which includes § 3582(c), apply only to offenses committed after the SRA's effective date of November 1, 1987." In *United States v. Rios*, No. 70-cr-592 (BMC), 2020 WL 2522069 (E.D.N.Y. May 18, 2020), Judge Cogan said at *2: "Based on this clear statutory language, courts have uniformly held that the current compassionate release statute, § 3582, does not apply to individuals whose crime conduct occurred before November 1, 1987." (citing cases).

In *United States v. Lika*, No. 84-CR-499 (CS), 2020 WL 2766049 (S.D.N.Y. May 28, 2020), the government argued that the defendant "may not take advantage of § 3582(c)(1)(A) because he was sentenced before that statute became effective in 198[.]" 2020 WL 2766049, at *1. Judge Seibel acknowledged that "it appears the government is correct[,]" citing *Rivera*, but went on to consider (and reject) the merits of the defendant's motion anyway, "in an excess of caution," since "[i]t is not clear why Congress would have wanted to extend" First Step Act privileges "to prisoners sentenced since 1987 but not to those sentenced before." *Id.* One may share Judge Seibel's intellectual puzzlement, but Congress clearly expressed its desire to limit the privileges conferred by the First Step Act to "offenses committed after the taking effect" of the SRA. *Accord* 24 F.4th at 1229. Congress engaged in the effort, by amendment, of inserting that language into the very section of the First Step Act that Shakur relies upon in making the present motion. *Id.* Congress's decision to leave in effect two protocols for compassionate release (pre-November 1, 1987 and post-November 1, 1987) may puzzle some observers, but the nation has not yet reached the stage where judges must understand and agree with everything Congress does.

*United States v. Fisher*, 493 F. Supp. 3d 231 (S.D.N.Y. 2020), is seemingly outside this line of authority. Although the organized crime offenses of conviction clearly predated November 1, 1987, Judge Crotty considered and then granted a defendant's motion for compassionate release under § 3582(c)(1)(A). 493 F. Supp. 3d at 239. The government does not seem to have questioned the First Step Act's applicability to a defendant of this vintage, the defendant understandably did not raise the issue, and the trial judge (unlike Judge Keenan in *Rivera*) did not do so *sua sponte*. Whatever the procedural explanation for *Fisher* may be, I cannot regard it as reasoned authority for the proposition that First Step Act privileges apply to Shakur.

District court decisions from other circuits support the position the government takes in the case at bar. *See, e.g.*, *United States v. MacDonald*, 533 F. Supp. 3d 285, 287 (E.D.N.C. 2021) ("[T]he Sentencing Reform Act did not eradicate the old-law sentencing scheme, as the provisions of the Sentencing Reform Act apply *only* to offenses committed after the effective date of the Act. Accordingly, this Court's authority to consider a request for compassionate release filed by a defendant under 18 U.S.C. § 3582(c)(1)(A) does not extend to old-law defendants like MacDonald who were sentenced for crimes committed prior to November 1, 1987." (citations omitted)); *United States v. Budd*, No. DKC 73-644, 2021 WL 3857948, at *2 (D. Md. Aug. 30, 2021) (same).

Collections of other citations to the same effect appear in the cases cited *supra*. I am not aware of any case squarely holding, over the government's objection, that a defendant whose crime was committed prior to November 1, 1987 is authorized by § 3582(c)(1)(A) of the First Step Act to file a motion for reduction of sentence or compassionate release, or that a district court is authorized to consider such a motion.

Having considered the cited cases, I find myself constrained to hold that the statute Shakur

relies upon to authorize this Court to consider his motion for compassionate release does not apply to him, given that his crimes of conviction antedated November 1, 1987. That is the unanimous view of the other circuits deciding the issue, and I am not persuaded that the Second Circuit would reach a contrary conclusion. Shakur's motion must accordingly be dismissed because this Court is not authorized to consider its merits (and I do not do so).

Able counsel for Shakur attempt to demonstrate the requisite authority in this Court, but their efforts are unavailing. Counsel accurately point out that when the government opposed Shakur's initial motion for compassionate release, it did not argue that the motion was procedurally barred by the reason the government now asserts. The government acknowledges that it "failed at that time to recognize and thus to raise" Shakur's ineligibility for relief. Letter, Doc. 210. Shakur does not contend that the government's failure waives the point beyond recall, and I would not accept that contention if made. If the government is correct that Shakur is ineligible under the statutory scheme, that is akin to the Court lacking subject matter jurisdiction to consider Shakur's motion, a jurisdictional issue that must be confronted whenever and however it arises.

Shakur relies principally upon the use in the First Step Act of the phrase "in any case," which Shakur interprets as meaning that all pre-November 1, 1987 offenses are now subject to § 3582(c)(1). That contention was rejected by the Seventh Circuit in *Jackson,* 991 F. Supp. 3d at 854, and by the Ninth Circuit in *King*, 24 F.4th at 1229–30, and I reject it in this case, for the reasons articulated by those courts of appeals.

The Sentencing Reform Act of 1984 was subjected to a number of amendments as the years went by. The district court noted in *MacDonald* that the "in any case" phrase "has been included in § 3582(c)(1) since its inception, and from its inception the 'in any case' language has not served

to override the 1987 cutoff date[,]'" the effective date of the SRA which defines the prisoners to whom the statutory scheme applies. 533 F. Supp. 3d at 288 (citations omitted).

I am not able to discern any basis upon which to conclude that Shakur is authorized by statute to make this motion for compassionate release, or that this Court is authorized to consider such a motion. The overwhelming weight of judicial decisions forecloses that authority.

This is a difficult case. The government does not question the dire nature of Shakur's present medical condition. Shakur also submits testimonials which describe his rehabilitation in prison and humanitarian assistance he has rendered to other inmates. On the other hand, members of the family of the Brinks employee who was killed during the crimes of conviction have written to the Court, expressing their continuing grief and opposition to any reduction in Shakur's sentence. These are merits issues which I do not reach because, for the reasons stated, Shakur is procedurally barred from making this motion in the district court.

Shakur is able to apply again to the Bureau of Prisons, which as noted *supra* granted a compassionate release to Shakur's co-defendant, Marilyn Buck, when she was serving this Court's sentence and dying of cancer. The record indicates that Shakur has made previous appeals to the Bureau of Prisons which the BOP denied, but it seems that Shakur's medical condition has worsened since then, and he retains the right to appeal to the executive branch of government. However, under the governing law, this Court has no authority to grant a reduction of sentence or compassionate release to Mutulu Shakur.

### III. Conclusion

For the foregoing reasons, Shakur's Emergency Motion for Reduction of Sentence [Doc. 207] is DENIED.

The Clerk of the court is directed to close the file.

It is SO ORDERED.


Dated: New Haven, Connecticut
       August 31, 2022

>  */s/ Charles S. Haight, Jr.*
> CHARLES S. HAIGHT, JR.
> Senior United States District Judge